IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CRW MECHANICAL CONSULTING AND FABRICATION, LLC, a limited liability company; <br><br> Plaintiff, <br><br> vs. <br><br> AARON F. SANDINE, an individual; and AFS FABRICATION, LLC, a limited liability company; <br><br> Defendants. | 8:19-CV-407 <br><br> MEMORANDUM AND ORDER |

This case comes before the Court on Defendants' Motion to Remand (Filing 13) and Plaintiff's Motion for Immediate Order of Attachment (Filing 8). The Court finds that it has subject-matter jurisdiction over this matter and denies Defendants' Motion to Remand. The Court also finds that Plaintiff has not met its burden of demonstrating one of the prerequisites for statutory attachment under Neb. Rev. Stat. § 25-1001 (Reissue 2016) by a preponderance of the evidence. Accordingly, Plaintiff's Motion for Order of Immediate Attachment is denied.

## I. BACKGROUND

Plaintiff, CRW Mechanical Consulting and Fabrication, LLC ("CRW"), is owned by its sole member Nathan C. Ruff ("Ruff"). Filing 18-1 at 1. Ruff purchased a residence in Ohio in August of 2013 and has lived at the residence since that time. Filing 18-1 at 1. In the past year, Ruff has been physically present in Ohio for fifty weeks, and he intends to continue living there. Filing 18-1 at 1-2. Despite living in Ohio, Ruff received correspondence from the Internal Revenue Service through September of 2018 at a Nebraska address. Filing 15 at 2. Ruff also received a few

1

other documents at various Nebraska addresses. Filing 15 at 1-2. Ruff may have also licensed his vehicles in Nebraska prior to July of 2019. Filing 15 at 2.

As it relates to attachment, Ruff states CRW finished a project for a customer, and the customer paid the amount due to CRW into Defendant, AFS Fabrication, LLC's ("AFS"), bank account at Defendant, Aaron Sandine's ("Sandine"), direction. Filing 10-1 at 2. Sandine is the sole owner and member of AFS. Filing 10-1 at 1. According to Ruff, Sandine misappropriated funds from a customer and misled CRW by wrongfully routing the customer's payment to his company's bank account. Filing 10-1 at 2-3. Ruff alleges he asked Sandine whether the customer had ever paid, apparently unaware of the customer's payment to AFS. Filing 10-1 at 2. Documentation provided by Ruff shows Sandine received $421,902.41 from the customer. Filing 10-2.

Sandine confirms that he received $421,902.41 from the customer but avers that Ruff directed him and AFS to receive all funds from the customer and pay expenses with those funds. Filing 17 at 2. Ruff directed him to do so as part of his plan to make Sandine a partner at CRW. Filing 17 at 3. Sandine provided documentation showing that he used a portion of the disputed funds to pay subcontractors for work completed as a part of the underlying project. Filing 17 at 2; Filing 17 at 24. Sandine also provided a sample from a text exchange between himself and Ruff showing Ruff was aware AFS received payment from the customer. Filing 17 at 21.

## II. DISCUSSION

### A. Subject-Matter Jurisdiction

Defendants' Motion to Remand was filed subsequent to Plaintiff's motion regarding attachment, but the Court must determine whether it has subject-matter jurisdiction before proceeding any further. Defendants request that the Court "remand this matter to the Douglas County District Court" for further proceedings. Filing 13 at 1. However, federal courts cannot

remand an action originally filed in federal court. *See Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1017 (8th Cir. 2015) ("[A] district court has no power to remand a non-removed case to state court."); 14C Fed. Prac. & Proc. Juris. § 3739 (Rev. 4th ed.) ("Moreover, federal courts cannot remand an action that was originally filed in federal court."); *see also* 28 U.S.C. § 1447 (discussing remand as a possible "[p]rocedure *after removal*" (emphasis supplied)).

Looking to the substance of Defendants' request, the Court deduces that Defendants are suggesting this court lacks subject-matter jurisdiction due to a lack of diversity between the parties. Accordingly, the Court treats Defendants' motion as one to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). There is no dispute as to satisfaction of the amount-in-controversy requirement or Defendants' Nebraska citizenship. At issue is CRW's citizenship. Specifically, Defendants argue Ruff, as the sole member of CRW, is a citizen of Nebraska while CRW argues Ruff is a citizen of Ohio. *See* Filing 14 at 3; Filing 18 at 3.

To determine diversity jurisdiction, courts look to the parties' citizenship statuses at the lawsuit's filing. *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). "Federal court diversity jurisdiction of state law claims requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants." *Id.* (citing 28 U.S.C. § 1332(a)). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *Id.* "An LLC's citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its members." *Id.* (quoting *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004)). Citizenship is established when an individual is both physically present in a state and has the intent to make his

or her home there. *Eckerberg v. Inter-State Studio & Publ'g Co.*, 860 F.3d 1079, 1085 (8th Cir. 2017).

The Court may receive competent evidence such as affidavits, deposition testimony, and other evidence in order to resolve a factual dispute when a factual attack is made on the jurisdictional allegations of the complaint. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4, 67 S. Ct. 1009, 1011 n.4, 91 L. Ed. 1209 (1947)). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* The burden of proving jurisdiction is on the plaintiff. *Id.*

Because CRW is organized as a limited liability company and Ruff is the sole member, the Court must determine Ruff's personal citizenship to determine the citizenship of the limited liability company. Filing 18-1 at 1; *see also OnePoint Sols., LLC*, 486 F.3d at 346. CRW has presented evidence that Ruff purchased a residence in Ohio in August of 2013 and has lived at the residence since that time. Filing 18-1 at 1. Ruff has been physically present in Ohio for approximately fifty out of the last fifty-two weeks. Filing 18-1 at 1-2. Ruff further intends to continue living at his Ohio residence. Filing 18-1 at 1-2. On the other hand, Defendants have provided evidence that Ruff has a presence in Nebraska, receives some mail there, and either he or an entity affiliated with Ruff has a vehicle in Nebraska. Filing 15 at 1-2. Defendants acknowledged at the hearing of this matter that Defendants have presented no evidence illustrating that Ruff had Nebraska citizenship as of the date this action was filed, which was September 13, 2019.

Based upon the evidence presented, the Court finds Ruff—and therefore CRW—is a citizen of Ohio. This Court may therefore exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

**B. Attachment**

The Court declines to grant CRW's request for attachment under Fed. R. Civ. P. 64 and Neb. Rev. Stat. § 25-1001 et seq. because CRW has not proven a requisite of Neb. Rev. Stat. § 25-1001 by a preponderance of the evidence.

CRW's Motion for Order of Immediate Attachment requests that this Court grant attachment of Defendants' "financial assets in their possession" under Section 25-1001. Filing 8 at 1. The motion goes on to request that this Court enter an order 1) attaching a bank account held by AFS and 2) ordering Defendants not to "remove, transfer, assign, or otherwise dispose of the funds" in the account. Filing 8 at 2. At the hearing held on this matter, CRW clarified its position by stating the Court should order Sandine not to deplete or spend the funds in the account because Sandine is solely in charge of the bank account. CWR clarified it was not requesting that the Court issue an order to Pinnacle Bank to freeze the account funds.

Fed. R. Civ. P. 64 allows federal court litigants to utilize state-law remedies to secure the property of a party at the commencement of an action in order to secure satisfaction of the potential judgment. Attachment is one of the multiple remedies that are available under Fed. R. Civ. P. 64(b). The state statute governing attachment provides, "[t]he plaintiff, in a civil action for the recovery of money, may, at or after the commencement thereof, have an attachment against the property of the defendant . . . ." Neb. Rev. Stat. § 25-1001. As a prerequisite to attachment, however, the plaintiff must demonstrate the defendant has engaged in certain enumerated acts:

> (1) has absconded with the intent to defraud his or her creditors; (2) has left the county of his or her residence to avoid the service of a summons; (3) so conceals

5

himself or herself that a summons cannot be served upon him or her; (4) is about to remove his or her property, or a part thereof, out of the county in which the property is located, with the intent to defraud his or her creditors; (5) is about to convert his or her property, or a part thereof, into money, for the purpose of placing it beyond the reach of his or her creditors; (6) has property, or rights, in action, which he or she conceals; (7) has assigned, removed or disposed of, or is about to dispose of his or her property, or a part thereof, with the intent to defraud his or her creditors; or (8) fraudulently contracted the debt or incurred the obligation for which suit is about to be or has been brought.

Neb. Rev. Stat. § 25-1001.

CRW alleges "funds . . . were wrongfully obtained by Defendants and, at the direction of Defendants, were diverted directly into the Bank Account that Plaintiff seeks to attach." Filing 8 at 2. CRW argues "[t]his is sufficient evidence to find . . . that the Defendants intended to defraud [CRW]." Filing 8 at 2. Thus, it appears to the Court that CRW makes a claim that Defendants' conduct falls under subsection eight of the attachment statute for conduct in which the defendant "fraudulently contracted the debt or incurred the obligation for which suit is about to be or has been brought." Neb. Rev. Stat. § 25-1001(8). *See* Filing 9 at 2, 4-5.

Neb. Rev. Stat. § 25-1002 provides that the movant must support its request for attachment by providing evidence, by affidavit or otherwise, establishing the following:

> (1) that the facts set forth in plaintiff's complaint which state a valid cause of action and the amount plaintiff is entitled to recover are true, (2) describing the existence and approximate value of any of defendant's property known to the plaintiff to be subject to the jurisdiction of the court, and (3) stating specific facts demonstrating reasonable cause that one or more of the grounds for an attachment enumerated in section 25-1001 exist.

Neb. Rev. Stat. § 25-1002 (Reissue 2016). If the movant successfully establishes all three requirements, the Court must approve an order of attachment. *Id.*

When the facts contained within the plaintiff's supporting affidavit are disputed, the burden of meeting the statutory requirements rests upon the plaintiff. *Nat'l Reefer Serv., Inc. v. Felman,*

164 Neb. 783, 786, 83 N.W.2d 547, 549 (1957).[1] The plaintiff "must sustain his charges by proof." *Id.* The plaintiff must prove the required elements of Section 25-1002 by a preponderance of the evidence. *Geneva Nat. Bank v. Bailor*, 48 Neb. 866, 67 N.W. 865, 866 (1896); *see also Malcom Sav. Bank v. Cronin*, 80 Neb. 231, 116 N.W. 150, 150 (1908) (citing *Bailor*, 48 Neb. 866, 67 N.W. at 866) ("The rule is well established in this court that, where the allegations made in support of an attachment are denied by the oath of the defendant, the burden is upon the plaintiff to prove his alleged grounds for attachment by a preponderance of the evidence.").

Here, CRW urges the Court to find that "Defendants intended to defraud Plaintiff" and that the requirement of Section 25-1001 is therefore satisfied. Filing 8 at 2; *see* Neb. Rev. Stat. § 25-1001(8). Filing No. 9 at 4. CRW argues that Sandine and AFS committed fraud by diverting a CRW customer's payment into an AFS bank account. Filing 9 at 2-4. CRW supports its argument with a sworn declaration from Ruff, a "Vendor ACH Consent Form," and an invoice history. *See generally* Filing 10. CRW provided evidence that AFS took payment of $421,902.41 from a CRW customer. Filing 10-2. In Ruff's sworn declaration, he claims Sandine misappropriated the $421,902.41. Filing 10-1 at 2.

AFS and Sandine dispute that the diversion of funds to the AFS account was fraudulent. They have responded with a declaration from Sandine alleging Ruff "directed [him] to have AFS receive all funds" from the customer in question. Filing 17 at 2. Sandine states, "[f]rom those funds, I was to pay all expenses resulting from the project. This included paying other subcontractors as well as CRW." Filing 17 at 2. According to Sandine's declaration, "[t]he

---

[1] *National Reefer Service* addresses affidavits in the context of a motion to dissolve a previously ordered attachment. In that case, the moving party originally filed an affidavit in support of attachment, and the nonmoving party submitted an affidavit denying the allegations contained in the moving party's affidavit. *Nat'l Reefer*, 164 Neb. at 786, 83 N.W.2d at 549. However, there is no reason to shift the burden to the nonmoving defendant here, at the onset, because conflicting affidavits are still the prevailing issue.

payment arrangement between [the customer] and AFS was made with the full knowledge and consent of Ruff." Filing 17 at 2.

The Court concludes that at this early stage of the litigation, CRW has not proven by a preponderance of the evidence that Defendants "fraudulently . . . incurred the obligation for which [the] suit is about." At best, both parties have submitted conflicting declarations and documentary evidence which show differing versions of events. Given Sandine's declaration indicating the diversion of funds was done not only with CRW's knowledge, but at Ruff's behest, the Court cannot conclude Plaintiff has proven by a preponderance of the evidence that Defendants obtained the funds fraudulently. The Court further concludes that Plaintiff has not proven by a preponderance of the evidence grounds for attachment under any of the other statutory subsections of Neb. Rev. Stat. §§ 25-1001(1)-(8). Accordingly, the Court denies Plaintiff's motion to attach certain property in the possession of Defendants.[2]

### III. CONCLUSION

For the foregoing reasons, the Court finds that it has subject-matter jurisdiction pursuant to diversity jurisdiction, 28 U.S.C. § 1332(a). The Court further concludes that Plaintiff has not met its burden to support attachment under Neb. Rev. Stat. § 25-1001.

**IT IS THEREFORE ORDERED:**

1. Defendants' Motion to Remand (Filing 13) is denied;

2. Plaintiff's Motion for Order of Immediate Attachment (Filing 8) is denied.

---

[2] At the hearing on this matter, CRW clarified its motion for attachment by stating that CRW is asking the Court to order Sandine, on behalf of AFS, to refrain from depleting the funds in the AFS Pinnacle Bank account referenced in the Complaint. CRW acknowledged that it is not asking the Court to issue an order which binds Pinnacle Bank in any manner. The Court questions whether Neb. Rev. Stat. § 25-1001 et seq. is the proper remedy for enjoining an individual from depleting funds held by a third-party bank. However, given the Court's conclusion that Plaintiff has not met its burden of proof to demonstrate a ground for attachment under to Neb. Rev. Stat. § 1001, the Court need not address this issue.

Dated this 11th day of October, 2019.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge